IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

KATHI BOWMAN, INDIVIDUALLY          )
AND ON BEHALF OF ALL OTHER          )
PERSONS SIMILARLY SITUATED,         )
                                    )
            Plaintiff,              )
                                    )
                                    )
v.                                  )          No. 3:09-CV-16
                                    )
CROSSMARK, INC.,                    )
                                    )
            Defendant.              )

## MEMORANDUM OPINION

This civil action is before the court on "Defendant Crossmark, Inc.'s Motion

for Summary Judgment" [doc. 56].[1] Plaintiffs have filed a response [doc. 68], and defendant

has submitted a reply [doc. 72]. Oral argument is unnecessary, and the motion is ripe for the

court's consideration and determination.

Plaintiffs have brought suit for alleged violation of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 206(a) and § 207(a). Plaintiff Kathi Bowman has also brought

claims for retaliatory discharge under the FLSA, 29 U.S.C. § 215(a)(3), and based upon

Tennessee common and statutory law under the Tennessee Public Protection Act ("TPPA"),

---

[1] Defendant's motion seeks summary judgment on all the claims asserted by plaintiffs Kathi
Bowman and Cheryl Bean. Plaintiffs' second amended complaint [doc. 54] filed on January 26,
2011, contains collective action allegations. Prior to the filing of this amended complaint, on July
19, 2010, the court entered a memorandum opinion and order [docs. 47, 48] denying plaintiffs'
"Motion for Conditional Certification of Collective Action and for Court Approved Notice to
Members of Collective Class" [doc. 18]. Thus, the only claims that remain before the court are those
of the individual plaintiffs.

Tenn. Code Ann. § 50-1-304. Plaintiff Cheryl Bean has brought common law claims for debt, quantum meruit, and unjust enrichment under Texas law and a statutory claim pursuant to the Texas Payday Law, Texas Labor Code § 61.001 *et seq*. For the reasons that follow, the motion will be granted in part and denied in part.

I.

*Background*

Defendant, Crossmark, Inc. ("Crossmark"), provides sales and retail merchandising and inventory support services to retailers and consumer goods manufacturers. These services are provided by employees called "retail representatives." According to Crossmark, this group includes more than 12,000 employees nationwide who are divided into different divisions and who perform different roles and duties. The representatives are also located in different territories and report to different supervisors. The supervisors provide retail representatives with instructions and suggestions regarding how best to perform administrative tasks and their store work assignments. Retail representatives are employed full time, regular part-time, or surge part-time. Full-time representatives work 40 hours per week; regular part-time representatives generally work less than 40 hours per week but do receive regular ongoing work assignments and objectives. Surge part-time representatives are employed on an "on-call" basis and work irregular hours. Crossmark considers retail representatives non-exempt under the FLSA and pays them on an

2

hourly basis.

Crossmark has a standard job description for a Retail Representative that includes a list of "Essential Duties and Responsibilities." That list states that a retail representative:

> 1. Schedules tasks on weekly basis to meet execution objectives
> 2. Executes retail merchandising tasks as scheduled
> 3. Performs stores/tasks in efficient/cost effective manner
> 4. Accurately reports all completed retail tasks via the appropriate designated systems on the day the work is performed
> 5. Communicates effectively with store personnel regarding tasks, sales activities, promotions, and client/sales plan objectives
> 6. Completes required training and certification programs
> 7. Engage every workday with CROSSMARK'S communication tools for the purpose of accurately planning, reporting, and reviewing work
> 8. Ability to implement retail schematics and merchandising materials as assigned
> 9. Flexibility to participate in team scheduled tasks and clients work-withs (sic)
> 10. Dedicated to providing excellent customer service and to develop a professional working relationship with store management, associates and other merchandising companies to effectively meet company and client objectives
> 11. Insures proper maintenance on all company equipment
> 12. Follows company policies, procedures, and position responsibilities

The job description also notes that representatives may be required to perform other job-related tasks as directed by management other than those listed. In addition to in-store duties, representatives perform certain work-related tasks outside of the stores. These administrative duties include checking emails, confirming work schedules, contacting a supervisor, and

3

reporting to SalesTrak, the computer program used by representatives to self-report their time

worked. Crossmark pays its representatives for this administrative time.

Crossmark also has a "Drive Time" policy related to retail representatives

which states as follows:

> Non-exempt associates are "on the clock" once the associate
> arrives at the first work location of the day and goes "off the
> clock" once the associate leaves the last work location of the
> day. Drive time between work locations during the day is to be
> recorded as time worked. Time spent on personal stops and
> lunch breaks between work locations is not considered drive
> time. However, the theoretical drive time between store
> locations will be paid in the event the associate deviates from
> their recommended coverage routes for personal stops . . . .

> For retail associates, certain territories/work assignments may
> require longer than normal drive times to the first work location
> of the day. For those assignments, the associate will "go on the
> clock" after the first hour of drive time and will go "off the
> clock" at the beginning of the last hour of travel home. The
> supervisor will determine if this applies to the associate.
> Therefore, the associate is not paid for the first hour of drive
> time to his/her work location of the day or for the last hour of
> drive time when returning home.

Retail representatives are not required to work during drive time and are discouraged from

doing so. Further, representatives are completely relieved during drive time. Both plaintiffs

acknowledged and signed the drive-time policy, agreeing to abide by it.

Plaintiff Kathi Bowman ("Bowman") was hired by Crossmark as a "Surge"

Retail Representative on March 17, 2006. Bowman worked mostly in and around the

LaFollette, Tennessee area, and her field supervisor was Malinda Hackworth. Hackworth

4

reported to her Regional Operations Manager at the time, Tom Miller. Bowman was terminated on July 31, 2008. Crossmark states that Bowman was terminated because she continued to refuse to comply with the drive-time policy. Bowman's position is that she was terminated in retaliation for complaining about the drive-time policy, which she claims is illegal.

Prior to July 2008, Bowman had several conversations with Hackworth in which Bowman contended that based upon an IRS position, she was entitled to be paid for all of her drive time.[2] Bowman maintained to Hackworth that the policy was illegal and she would not follow it. Hackworth's deposition testimony and declaration indicate that she had suspicions that Bowman was not following the policy despite checking her entries periodically.

On July 14, 2008, a payroll associate, Tine Rodriguez, received an automated payroll flag for excessive drive-time entries for Bowman on July 7 and 9, 2008. Rodriguez contacted Bowman and Hackworth, and eventually Rodriguez's supervisor became involved. On July 15, Hackworth contacted Miller informing him that Bowman was not following the drive-time policy. Miller responded that Bowman's drive time needed to be closely monitored. Also on July 15, Miller confirmed the drive-time policy with Fisher and asked Hackworth to reiterate the policy to Bowman. Hackworth forwarded Fisher's email to

---

[2] The factual events that follow concerning Bowman only provide a basic time-line framework for purposes of background. The record presented by the parties is beyond voluminous and will not be completely restated herein.

5

Bowman. On July 16 Miller emailed Hackworth that "if we continue to have issues with her we may need to start with a counseling form and move forward from there."

On July 18, Bowman sent an email to Fisher explaining her position concerning the drive-time policy based upon the IRS publication. In an email sent July 21, Miller asked Rodriguez to provide a list of Bowman's payroll entries for July 14-July 18, 2008, which Rodriguez sent at 7:23 p.m. July 21. At 8:06 p.m. the same evening, Miller sent an email to Rodriguez and Hackworth saying that "this has to end and we need to make sure all of us, payroll, HR, Malinda and I are all in agreement that we need to move to terminate her as soon as possible . . . ." The next morning, July 22, 2008, Bowman informed Fisher, Miller, Hackworth and Rodriguez that she had obtained counsel. Bowman was not notified of the termination decision until July 31, 2008, because Miller had to obtain approval from Employee Relations.

Plaintiff Cheryl Bean ("Bean")[3] was employed by Crossmark as a part-time retail representative from approximately May 2006 through October 2008, when she was terminated. She worked primarily in and around the Kountze, Texas area. She worked on the Wal-Mart team, meaning she worked exclusively in Wal-Mart stores. Michelle Oatman was Bean's supervisor for the majority of her employment.

Both plaintiffs' position is that they were required to perform job-related activities in their homes immediately before traveling to their first retail location and

---

[3] Plaintiff Bowman filed the original complaint January 12, 2009. An amended complaint adding Bean as a named plaintiff was filed October 28, 2009 [doc. 16].

immediately after returning home from their last retail location. Their contention is that because their workday began with job-related tasks at home, the drive time to their first retail location should have been part of the continuous workday and compensable. The drive time home should also be compensable because their workday did not end until they completed job-related tasks at home after returning from the last retail location. Crossmark's position is that the administrative duties plaintiffs performed were not required to be done at home at a specific time and could have been accomplished at various times of the day, wherever the employee had access to the internet.

## II.

### *Standard of Review*

Crossmark's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.[4] Rule 56(a) sets forth the standard for summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."

---

[4] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. The Advisory Committee Notes to the 2010 amendments reflect that the standard for granting summary judgment "remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]." Fed. R. Civ. P. 56 advisory committee's note.

This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

8

III.

*Analysis*

The FLSA

Congress enacted the FLSA in 1938 "to correct existing 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *In re Cargill Meat Solutions Wage & Hour Litig.*, 632 F. Supp. 2d 368, 377 (M.D. Pa. 2008) (citing 29 U.S.C. § 202(a)). Section 207(a)(1) of the FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half-times the regular rate at which he is employed.

*Brock v. City of Cincinnati*, 236 F.3d 793, 800 (6th Cir. 2001) (quoting 29 U.S.C. § 207(a)(1)). "Neither 'work' nor 'workweek' is defined in the statute." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). Early Supreme Court cases defined these terms broadly. *Id*. The Supreme Court in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court "defined 'the statutory workweek' to 'includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at

9

a prescribed workplace' . . . [and] held that the time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations must be treated as part of the workweek." *IBP*, 546 U.S. at 25-26 (citing *Anderson*, 328 U.S. at 690-92).

In 1947, in response to *Anderson* and "[b]ased on findings that judicial interpretations of the FLSA had superseded long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation," Congress passed the Portal-to-Portal Act. *IBP*, 546 U.S. at 26 (internal quotation marks and citation omitted). The Portal-to-Portal Act "narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under [Supreme Court] cases: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." *Id*. at 27. The Portal-to-Portal Act provides in pertinent part:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . .
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee

10

> commences, or subsequent to the time on any particular workday
> at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

Other than these express exceptions, "the Portal-to-Portal Act does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday'." *IBP*, 546 U.S. at 28. Regulations promulgated by the Secretary of Labor after the Portal-to-Portal Act was passed "concluded that the statute had no effect on the computation of hours that are worked 'within' the workday." *Id*. Additionally, "the Department of Labor has adopted the continuous workday rule, which means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Id*. at 29 (citing 29 CFR § 790.6(b)).

Section 206 of the FLSA deals with the requirement to pay minimum wage. It provides in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
> (1)    except as otherwise provided in this section, not less than - -
> (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
> (B) $6.55 an hour, beginning 12 months after that 60th day; and
> (C) $7.25 an hour, beginning 24 months after that 60th day; . . . .

11

29 U.S.C. § 206(a).

<u>Plaintiffs' FLSA Claims</u>

**Section 206(a) Claims**

Both plaintiffs asserted claims for alleged violation of § 206(a) of the FLSA. As noted above, section 206(a) requires employers to pay employees the minimum wage rates set out in the statute. At the end of July 2008, the minimum wage rate rose from $5.85 to $6.55 per hour. Bowman was being paid $10.75 per hour in July 2008 while Bean began employment in May 2006 with a wage of $10.00 per hour, which rose to $10.20 per hour in May 2007. That rate remained her wage until her termination in October 2008. Crossmark argues, and both plaintiffs have no evidence to the contrary, that even if the drive time at issue were compensable, failure to pay for that time did not reduce the wage of either plaintiff below the minimum wage level. Consequently, both plaintiffs' claims based upon a violation of § 206(a) fail.

Neither Bowman nor Bean can establish a minimum wage violation as they have presented no proof to demonstrate that any failure to pay them drive time resulted in their being paid below minimum wage. Consequently, the § 206(a) claims for both plaintiffs fail and will be dismissed.

12

**Section 207(a) Claims**

Section 207(a) of the FLSA addresses the required payment of overtime by employers. Again, both plaintiffs asserted claims for failure to pay overtime based upon nonpayment of drive time. However, Bean has presented no proof that she, as a part-time employee, worked overtime without payment and thus cannot establish an overtime violation claim. Accordingly, her § 207(a) claim will be dismissed, and the court will only address Bowman's FLSA overtime claim.

With regard to Bowman's § 207(a) claim, she admits in her response to Crossmark's motion for summary judgment that prior to July 22, 2008, she did not lose any overtime compensation because she reported all of her drive time and thus was paid for all of her drive time up until July 22, 2008. Bowman was terminated July 31, 2008, so her overtime claim covers only the time she worked between July 22, 2008, and July 31, 2008, when she reported her drive time in compliance with Crossmark's policy.

Under the requirements of the FLSA, employers must "pay their employees time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 765 (6th Cir. 2006). The employee has the burden of proving "by a preponderance of the evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). If liability is established, the employee can prove damages "through discovery and analysis of

13

the employer's code-mandated records." *Id.* (citing *Mt. Clemens Pottery*, 328 U.S. at 687).

Bowman bases her overtime claim on the contention that her drive time is compensable under the continuous workday rule. Her argument is that because she was not paid for all her drive time, she did not receive compensation for the hours over 40 that she worked in a week. Bowman contends that her drive time falls within the continuous workday rule because at the beginning and end of each workday she was required to perform tasks that were integral and indispensable to the principal activities of her job.

Crossmark argues that the duties Bowman performed at the beginning and end of the workday were not integral and indispensable and did not trigger the continuous workday rule. Crossmark maintains that Bowman was not required to do the administrative tasks immediately before leaving home or immediately upon returning home and that she was completely relieved during her commute time.

The general rule has always been that under the FLSA, ordinary home to workplace travel is not compensable.[5] *Kuebel v. Black & Decker, Inc*., 643 F.3d 352 (2nd Cir. 2011); *Kavanagh v. Grand Union Co.*, 192 F.3d 269 (2d Cir. 1999).

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. *Normal travel from home to work is not worktime.*

---

[5] "The regulations have reflected this fact for at least fifty years." *Kuebel v. Black & Decker, Inc*., 643 F.3d 352, 360 (2nd Cir. 2011) (citing 29 C.F.R. § 785.35; 26 Fed.Reg. 190, 194 (Jan. 11, 1961)).

29 C.F.R. § 785.35 (emphasis added).

Crossmark relies heavily on *Kuebel*, a recent Second Circuit case remarkably similar to this one. Kuebel was a Retail Specialist for Black & Decker ("B&D") whose responsibilities included making sure that B&D products were properly stocked, shelved, and supplied at Home Depot stores. This required him to drive to various store locations. Retail Specialists were also required to use Personal Digital Assistants (PDAs") to record store time. The PDAs had to be synchronized with B&D's server which Kuebel did from his home computer. Kuebel also performed other tasks from his home office, including dealing with emails, checking voicemail, reviewing and printing sales reports, and taking online training courses. These activities took fifteen to thirty minutes in the morning before Kuebel left for his first store and fifteen to thirty minutes after he returned home from his last store at the end of the day. B&D asserted that Kuebel was not required to perform all of these tasks at home or at a particular time. B&D had a commute time policy which paid Retail Specialists for driving time to and from their first and last Home Depot Store to the extent the time was in excess of sixty miles. Kuebel's manager instructed him to use sixty minutes as the measure of compensable driving time.

Kuebel brought a claim for commute time based upon the continuous workday rule theory. He sought compensation for all of his commuting time because he contended that the administrative tasks he performed at home were integral and indispensable to his principal job activities.

15

The district court had held that Kuebel's administrative tasks done at home were not integral and indispensable to his principal job activities and did not extend the workday, so his commute time was not compensable. The Second Circuit confirmed this part of the district court's opinion, but based upon different reasoning. *Kuebel* 643 F.3d at 361 n.4.

In its analysis, the Second Circuit referenced by analogy 29 C.F.R. § 785.16, a regulation that applies in the context of whether time spent waiting is compensable, which has been used by courts in cases like this one. The regulation provides that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." 29 C.F.R. § 785.16(a).

The Court cited as examples two cases, *Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010) and *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896 (D.Minn. 2010). With regard to these cases, the Second Circuit noted:

> [I]n *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010), the Ninth Circuit held that a technician's evening commute was not rendered compensable merely because he performed the arguably principal activity of uploading data to his employer after returning home, because he was free to "make the transmission[ ] at any time between 7:00 p.m. and 7:00 a.m." Similarly, in *Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896, 917 (D.Minn. 2010), the court held that *even if the plaintiff private investigators' pre- and post-surveillance activities – e.g., performing background checks and submitting reports – qualified as principal, that did not extend their workday to include the time spent driving to and from a surveillance site,*

16

> since "Plaintiffs were not required to perform the activities ...
> immediately prior to leaving for an investigation or immediately
> after returning home."

*Kuebel*, 643 F.3d at 360 (emphasis added). The Second Circuit in *Kuebel* concluded that a

similar analysis applied:

> [I]t cannot seriously be disputed that Kuebel had flexibility in
> deciding when to complete his daily administrative
> responsibilities of checking email, checking voicemail, synching
> his PDA, printing sales reports, making signs, and so forth. The
> record indicates only that it might have been necessary to
> perform certain activities in the morning, or in the evening. It
> does not indicate that Kuebel was required to perform them
> immediately before leaving home, or immediately after returning
> home. Indeed, there is nothing in the record to suggest that a
> Retail Specialist could not, for example, wake up early, check
> his email, synch his PDA, print a sales report, and then go to the
> gym, or take his kids to school, before driving to his first Home
> Depot store of the day; nor was Kuebel prevented from leaving
> his last store of the day and going straight to a restaurant for
> dinner, or waiting until late at night to synch his PDA (as
> electronic records show he sometimes did). That Kuebel may
> have frequently chosen to perform his at-home activities
> immediately before and after his commutes does not mean that
> B&D must pay him for the first hour of those drives – time that
> was not part of his continuous workday and that was, in the end,
> "ordinary home to work travel" outside the coverage of the
> FLSA.

*Id*. at 360-61 (citations omitted).

The reasoning and analysis in *Kuebel* can be applied in this case. The key

element noted by the Second Circuit was the flexibility that Kuebel had regarding when he

performed his administrative tasks at home. The record did not reflect any requirement that

they be done immediately before leaving in the morning or immediately upon returning in

17

the evening. This was a significant factor in both *Rutti* and *Ahle* as well. Crossmark argues that Bowman was not required to do her administrative duties immediately before leaving or returning home and that there is no company policy that requires these duties be performed at a particular time or place. Bowman has, however, in response to the summary judgment motion, submitted a declaration in which she makes statements concerning written and verbal instructions given to her concerning when she was to perform administrative tasks and how quickly.[6] Thus, there is an issue of fact whether Bowman was required to perform administrative tasks immediately prior to leaving for her first retail location and immediately after returning home from her last retail location.

## Willfulness Claim

In an attempt to obtain a three-year statute of limitations under the FLSA, plaintiffs assert a claim that Crossmark willfully violated the FLSA. 29 U.S.C. § 255. "An ordinary violation of the FLSA is subject to a two-year statute of limitations. However,

---

[6] The Bowman deposition excerpts and email references offered by Bowman in support of her contention that she was required to perform administrative tasks immediately before leaving and after returning do not support that contention. However, the declaration provided in response to the summary judgment motion raises an issue of fact. In addition, Bowman has also provided in support of her contention that she was required to do administrative tasks immediately before leaving home and immediately after arriving home affirmations from litigants in a New Jersey case involving Crossmark. The court has not considered these as they are irrelevant to Bowman's individual § 207(a) case. What retail representatives were told in New Jersey is not relevant to what Bowman was told in Tennessee by different supervisors. The same applies to Bean's statements on the subject. She no longer has a § 207(a) case, and the statements made to her by those named in her deposition testimony have not been connected to Bowman and what she individually was told.

18

where a violation is 'willful' a three-year statute of limitations applies." *Dole v. Elliot Travel & Tours, Inc*., 942 F.2d 962, 966 (6th Cir. 1991) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)). In order for a violation of the FLSA to be considered willful, a plaintiff must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]" *McLaughlin*, 486 U.S. at 133; *Dole*, 942 F.2d at 967. "Noncompliance with the FLSA that is merely negligent, even if unreasonable, is not considered willful." *Monroe v. FTS USA, LLC*, 763 F.Supp.2d 979, 991 (W.D.Tenn. 2011) (citing *McLaughlin*, 486 U.S. at 135 & n.13). The employee bringing the FLSA claim has the burden of showing that the employer's conduct was willful. *Perez v. Mountaire Farms, Inc*., 650 F.3d 350, 375 (4th Cir. 2011).

In the court's opinion, however, this issue does not need to be reached. The only overtime claim remaining is Bowman's individual claim for one week of unpaid overtime in July 2008, the last week she was employed. She had admitted in her briefing that she did not lose overtime compensation prior to July 22, 2008. Thus, whether a two-year or three-year statute of limitations is applied is of no consequence. Bowman is not claiming unpaid overtime for the entire expanse of her employment, March 17, 2006 - July 31, 2008; she admits to only a claim of unpaid overtime covering one week. Accordingly, whether or not there was a willful nonpayment of overtime in this case is moot.

**FLSA Retaliation**

Bowman alleges that she was retaliated against when she asserted her rights under the FLSA. The Act contains an anti-retaliation provision that makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a)(3). The *McDonnell Douglas* burden- shifting analysis applies to FLSA retaliation claims. *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Id*.

If the plaintiff successfully makes this prima facie showing, a presumption is created that the employer unlawfully discriminated against the employee. *Id*. The burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If this burden is met, the plaintiff "must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons but merely a pretext for illegal discrimination." *Id*.

20

Crossmark argues that Bowman cannot establish a prima facie case because she cannot show she engaged in protected activity and cannot show a causal connection between her complaints and termination. As to the protected activity element, Crossmark contends that Bowman's prior complaints that according to the IRS her home was a work location do not meet the purposes of the FLSA. Bowman contends that her complaints were sufficiently clear and detailed as they identified the drive-time policy which she claims is illegal. Bowman made verbal complaints to Hackworth and sent an email on July 18, 2008, to Rodger Fisher, the HR Vice President. In the email, Bowman set forth her position that her drive time was compensable based upon an IRS publication. Based upon that publication, she considered her home a work location, and the tasks she performed at home began and ended her workday. Therefore, she should be paid for her drive time.

"To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones," *Kasten v. Saint-Gobain Performance Plastics Corp*., 131 S. Ct. 1325, 1335 (2011). Bowman's complaints, while not specifically referencing the FLSA, did refer to a policy she claimed to be illegal that implicated her wages. Bowman's actions were sufficient to fall within the protected activity of the FLSA.

Crossmark also asserts that Bowman is unable to demonstrate the fourth prong of a prima facie case, a causal connection between the protected activity and her termination. "In order to demonstrate a causal connection, 'plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not [engaged in the protected activity].'" *Adair,* 452 F.3d at 490 (quoting *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999)). Bowman argues that the close time proximity of events surrounding her termination establish a causal connection sufficient for a prima facie case. She points out that on July 16, 2008, Miller's position was "we may need to start a counseling form and move forward from there." On July 18, Bowman sent her email to Fisher, and on Monday July 21, 2008, Miller's position was that "this has to end and we need to make sure all of us, payroll, HR, Malinda and I are in agreement that we need to move to terminate her as soon as possible." On July 22, 2008, Bowman sent an email notifying Crossmark that she had retained counsel. Bowman was not notified of the termination until July 31 because according to Miller he was seeking approval of his superiors.

The Sixth Circuit has held that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Thompson v. Quorum Health Res., LLC*, No. 10-5685, 2012 WL 2368871, at *8 (6th Cir. June 22, 2012) (citing *Mickey v.*

22

*Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).   While Crossmark makes

numerous well crafted arguments explaining the facts surrounding this event, the pending

matter is before the court on summary judgment, and all justifiable inferences must be drawn

in the plaintiff's favor.  Bowman has presented sufficient evidence to at least raise a material

issue of fact concerning a causal connection between her protected activity and her

termination.

Because Crossmark has offered a legitimate explanation for terminating

Bowman, her violation of the drive-time policy, the next inquiry is whether that reason is just

a pretext.   To demonstrate pretext, a "plaintiff must produce sufficient evidence from which

the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock*

*Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994), *abrogated on other grounds by Gross v.*

*FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

With regard to pretext, the Sixth Circuit has stated:

> To raise a genuine issue of material fact on the validity of an
> employer's explanation for an adverse job action, the plaintiff
> must show, again by a preponderance of the evidence, either (1)
> that the proffered reasons had no basis in fact; (2) that the
> proffered reasons did not actually motivate the action; or (3)
> that they were insufficient to motivate the action.

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)(citations omitted); *see*

*also Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (the court asks "whether

the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if

so how strong it is."). At all times, the ultimate burden of persuasion remains with the

plaintiff.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Crossmark's reason has a basis in fact since there is proof that Bowman violated the drive-time policy, even admitting to doing so.  Violation of company policy is arguably sufficient for termination, especially since she signed and agreed to follow the policy.  The inquiry then centers around whether the proffered reason actually motivated the termination, i.e., whether Bowman present sufficient evidence to cast doubt on Crossmark's explanation.  The question is a close one.  Crossmark offers very cogent arguments for why its explanation is not a pretext for discrimination.  Nevertheless, Bowman has offered proof of a tight sequence of events involving the decisionmaker, Miller, the timing of which casts doubt on Crossmark's explanation.  The court concludes that there is a material issue of fact concerning pretext, precluding summary judgment.

## TPPA Claim

Bowman asserts a claim under the TPPA for retaliatory discharge based on her alleged complaints regarding Crossmark's failure to pay for compensable drive time.  Under the TPPA, "the plaintiff  must demonstrate an *exclusive causal relationship* between his whistleblowing activity and his subsequent discharge. That is, the plaintiff must show that he was terminated solely because of his whistleblowing activity."  *Sacks v. Jones Printing Co., Inc.*, No. 1:05-CV-131, 2006 WL 686874, at *3 (E.D. Tenn. Mar. 16, 2006) (citing *Darnall v. A+ Home Care, Inc.*, No. 01-A-01-9807-CV-0034, 1999 WL 346225, at *5 (Tenn.

24

Ct. App. June 2, 1999)) (emphasis in original).[7]

In order to establish a prima facie case under the TPPA, a plaintiff must demonstrate four elements:

> (1) The plaintiff's status as an employee of the defendant;
> (2) The plaintiff's refusal to participate in, or to remain silent about, illegal activities;
> (3) The employer's discharge of the employee; and
> (4) An exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Sacks*, 2006 WL 686874, at *4 (citing *Hill v. Perrigo of Tenn.*, No. M2000-02452-COA-R3-CV, 2001 WL 694479, at *3 (Tenn. Ct. App. June 21, 2001)). "Once a plaintiff has made out a prima facie case, the burden shifts to the employer to advance a non-discriminatory reason for the termination.[8] The burden then shifts back to the plaintiff to show that his

---

[7] The court notes that Bowman does not state a claim under the TPPA in the second amended complaint because she fails to allege an element of the claim, that she was discharged *solely* for refusing to remain silent about or participate in illegal activity. *See Quinn-Glover v. Reg'l Med. Ctr. at Memphis*, No. W2011-00100-COA-R3-CV, 2012 WL 120209, at *7 (Tenn. Ct. App. Jan. 17, 2012). In her complaint, Bowman pleads her TPPA and common law claims together and makes no allegation that she was terminated *solely* because of her alleged complaints.

[8] In *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010), the Tennessee Supreme Court called into question continued application of the *McDonnell Douglas* burden-shifting framework in state retaliation claims. However, in *Moling v. O'Reilly Auto., Inc.*, 763 F. Supp. 2d 956 (W.D. Tenn. 2011), the district court analyzed the relevant issues and concluded that the standard applied at the summary judgment stage is procedural rather than substantive. The district court therefore analyzed the plaintiff's state law retaliation claim using the *McDonnell Douglas* framework. The court noted that "*Gossett* addressed only the analysis to be applied to *common law* retaliation claims," but "assume[d] *Gossett* governs both types of retaliation, although some courts
(continued...)

termination was solely for the reasons which he initially alleged." *Sacks*, 2006 WL 686874, at *4 (internal quotation marks and citations omitted). "Courts have recognized 'that the plaintiff has indeed a formidable burden in establishing elements number two and four of the cause of action.'" *Hill*, 2001 WL 694479, at *5 (and cases cited therein). The statute defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Wisdom v. Wellmont Health Sys.*, No. E2010-00716-COA-R9-CV, 2010 WL 5093867, at *3 (Tenn. Ct. App. Dec. 10, 2010); Tenn. Code Ann. § 50-1-304(a)(3).

Crossmark argues in part that Bowman cannot establish a prima facie case because she cannot establish the fourth element, the exclusive causal relationship. This is based on proof in the record that Bowman did in fact violate the company's drive-time policy. Bowman argues that there is sufficient evidence to show that her termination was based solely on the complaints, i.e., her refusal to remain silent about the drive-time policy which she believed violated the law. Therefore, there is evidence from which a jury could find the exclusive causal relationship necessary for the claim.

The exclusive causal relationship element is difficult to establish, and there is proof in this record that Bowman was terminated for reasons other than complaining about Crossmark's drive-time policy. Nevertheless, for the same reasons already discussed in

---

[8](...continued)
have held otherwise." *Id.* at 974 n.11 (citing *Philip v. Wrigley Mfg. Co., LLC*, No. 1:09-CV-144, 2010 WL 4318880, at *11 n.5 (E.D.Tenn. Oct. 22, 2010)). This court will apply the burden-shifting analysis to Bowman's state law retaliation claims.

Bowman's FLSA retaliatory discharge claim, there is a question of fact as to a causal relationship between Bowman's complaints/failure to remain silent and termination. The same is true for the issue of pretext concerning this claim. For the reasons already discussed, there is an issue of fact.

### Common Law Claim

In order to establish a prima facie case of common law retaliatory discharge, a plaintiff must demonstrate:

> (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or compliance with clear public policy.

*Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006)(citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002)); *see also McLeay v. Huddleston*, No. M2005-02118-COA-R3-CV, 2006 WL 2855164, at *6 (Tenn. Ct. App. Oct. 6, 2006). The essential difference between the statutory cause of action for retaliatory discharge and the common law cause of action is that with the common law cause of action a plaintiff need only show that his activity was a substantial factor in effectuating his

discharge rather than showing it was the sole reason for his discharge. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002).

If the plaintiff makes the necessary prima facie showing, the burden shifts to the employer to articulate a legitimate, non-pretextual reason for the discharge. *Yates v. Hertz Corp.*, 285 F. Supp. 2d 1104, 1117 (M.D. Tenn. 2003) (citations omitted). If the employer offers a legitimate reason for terminating the plaintiff, the burden then shifts back to the plaintiff to show that the reason given is pretextual or not worthy of belief. *Id.* at 1118 (citations omitted). "Essentially, causation does not exist if the employer's stated basis for the discharge is valid and non-pretextual." *Id.* (citations omitted).

For the reasons previously addressed in Bowman's TPPA and FLSA retaliation claims, this claim also has issues of fact regarding the prima facie element of causation and whether Crossmark's stated reason for Bowman's termination is pretextual. Therefore, summary judgment is not appropriate.

Bean's Texas Common Law Claims

Bean cannot establish claims based upon the FLSA, since she cannot show a minimum wage violation under § 206(a) nor can she demonstrate an overtime violation under § 207(a). "The remedial purpose of the FLSA simply does not reach employer obligations beyond the minimum wage and overtime requirements mandated under the Act." *Wright v. Pulaski Cnty.*, No. 4:09CV00065 SWW, 2010 WL 3328015, at *7 (E.D. Ark. Aug. 24, 2010).

28

She concedes that she has no right of action under the Texas Payday Law since that statute provides only an administrative avenue of relief.  *See Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78 (Tex. 2008).  Remaining for consideration are Bean's three common law claims asserted under Texas law: actions for debt, quantum meruit, and unjust enrichment.

### Action for Debt

Bean alleges a claim for unpaid wages based upon a common law action for debt.  The underpinning of the claim is that she was not paid for her drive time to her first retail location and from her last retail location.  Bean asserts that she performed integral and indispensable activities before and after her workday, and while paid for these administrative activities, she was not paid for her drive time at the beginning and end of her workday.  Crossmark argues that there is no common law claim for debt under Texas law and even if such a claim existed Bean cannot show she is owed any debt for lost wages as commuting time is not compensable.  While the court disagrees with Crossmark that such a cause of action exists under Texas law, the court does agree that Bean has failed to demonstrate a specific debt for lost wages.

"Under Texas common law, employees may sue for recovery of debt, and the Payday Law is 'neither cumulative of the common-law remedy, nor does it expressly or impliedly negate or deny the common-law remedy . . . .'" *Nart v. Open Text Corp.*, No. A-10-CA-870 LY, 2011 WL 3844216, at *4 (W.D. Tex. Aug. 29, 2011) (quoting *Bloch v. Dowell*

29

*Schlumberger Inc.*, 925 S.W.2d 301, 304 (Tex.App.-Houston 1996) (citing *Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192-93 (Tex.App.-Fort Worth 1995)); *see also Hull v. Davis*, 211 S.W.3d 461, 464 (Tex.App.-Houston 2006) ("An employee seeking unpaid wages from an employer may pursue a judicial action against the employer or may seek an administrative remedy as provided under the Payday Law.").

Nevertheless, Bean has not demonstrated a basis for lost wages. As noted above, Bean has conceded that she has no claims under the FLSA as the alleged failure to pay her drive time did not result in her wages going below the minimum wage and she did not work overtime because she did not work enough hours as a part-time employee. Her state law debt claim, however, is based on elements that would assert an FLSA violation, the necessity of activating the continuous workday rule in order to turn commuting time into compensable. Bean is attempting to be paid wages under Texas common law by using a factual overlay based upon the FLSA. As stated, she has no FLSA claim and has not provided any underlying basis in state law for the alleged unpaid wages, for example, breach of contract. "A worker seeking wages has two options: file an administrative claim with the Texas Workforce Commission (TWC) under the Payday Act or sue for a common law breach of contract claim." *Douglass v. Williams*, No. A-11-CV-416 LY, 2012 WL 1884908, at *4 (W.D. Tex. May 23, 2012) (citing *Abatement Inc. v. Williams*, 324 S.W3d 858, 863-64 (Tex.App.-Houston [14th Dist.] 2010, pet. denied)); *see also Bloch*, 925 S.W.2d 301 (common law action for debt to collect severance pay permitted in breach of contract action);

30

*Nart*, 2011 WL 3844216, at *3 (employee can pursue common law claim for unpaid wages as a breach of contract claim and sue for recovery of debt). Thus, Bean has not properly asserted or presented any proof to substantiate an actual debt based upon unpaid wages.

In addition, while Bean testified in her deposition that she is entitled to $10,000, she has not shown specifically how this documents lost wages. She referred to calendars that allegedly had drive time recorded, but such calendars have not been produced. In fact, no documentation to support her demand for $10,000 has been offered. Again, there is no proof of lost wages to support an action for common law debt.

## Quantum Meruit

In her quantum meruit claim, Bean alleges that Crossmark knew, based on its drive time policy, that she was not being compensated for her drive time. Bean also alleges that the uncompensated drive time was a valuable service to Crossmark, accepted by Crossmark for its benefit, and with knowledge that Bean expected to be paid for the service. Crossmark argues that the claim must be dismissed because Bean cannot establish all of the necessary elements of the claim. The court agrees with Crossmark that the claim fails.

"Quantum meruit is an equitable theory which permits a right to recover ... based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted." *CWTM Corp. v. AM Gen. L.L.C.*, No. H-04-2857, 2006 WL 1804622, at *10 (S.D. Tex. June 28, 2006) (quoting *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*,

331 F.3d 452, 462 (5th Cir. 2003) (internal quotation marks omitted); *see also LTS Group, Inc. v. Woodcrest Capital, L.L.C.*, 222 S.W.3d 918, 920 (Tex.App.-Dallas 2007) ("Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received."). "Founded on unjust enrichment, quantum meruit will be had when non payment for the services rendered would result in an unjust enrichment to the party benefitted by the work." *Green Garden Packaging Co., Inc. v. Schoenmann Produce Co., Inc.*, No. 01–09–00924-CV, 2010 WL 4395448, at *6 (Tex.App.-Houston Nov. 4, 2010) (internal quotation marks and citations omitted). "To recover under the doctrine of quantum meruit in Texas, Plaintiff must prove that (1) valuable services were rendered to Defendant; (2) Defendant accepted, used, and enjoyed the services; (3) under circumstances that reasonably notified Defendant that Plaintiff, in performing such services, expected to be compensated." *CWTM Corp.*, 2006 WL 1804622, at *10 (citations omitted).

In support of her claim Bean relies on *Rainbow Group, Ltd. v. Johnson*, No. 03-00-00559-CV, 2002 WL 1991141 (Tex.App.-Austin Aug. 30, 2002). This case is clearly distinguishable from the facts before this court. In *Rainbow*, hairstylists prevailed on a quantum meruit claim. The stylists, who worked for a chain of salons, were required to be at their particular store ready to work during scheduled hours, although they were off the clock. The court determined that the stylists provided a benefit to the store locations because they were present at store locations ready promptly to service arriving customers. The stylists also provided a benefit by attending store and product knowledge meetings where important

32

issues were discussed.

Bean was not required to be at the employer's premises attending meetings off the clock. She seeks compensation for her drive time to her first retail location and from her last retail location, commuting time. Crossmark did not require her to perform during that time and she admits she was relieved during the time as well. Her circumstance is unlike the hairstylists in *Rainbow*.

Bean simply did not provide a valuable service to Crossmark by driving to and from her first and last retail location, i.e., commuting to work. This is presumptively non-compensable time absent a specific circumstances and showing by statute. Furthermore, there are no circumstances notifying Crossmark that plaintiff expected to be compensated for the alleged services, even if valuable services had been rendered. Bean was on notice after the first month of her employment that the drive-time policy would be enforced and she would not be compensated for her drive time. Bean stated in her deposition that she complained that she should be paid. There is no written documentation supporting such complaints. In any event, Bean had seen and agreed to follow the drive-time policy. These facts do not give rise to "an implied agreement to pay for benefits received." *LTS Group*, 222 S.W.3d at 920. Thus, no basis exists for equitable recovery based upon quantum meruit.

## Unjust Enrichment

Bean's unjust enrichment claim is based on the contention that her uncompensated drive time from home to her first retail location and from her last retail location to home was a benefit accepted by Crossmark that would be inequitable for Crossmark to retain without payment. Crossmark contends *inter alia* that under Texas law there is no independent cause of action for unjust enrichment and that it did not obtain any "benefit" for the purposes of this "claim."

The Texas courts have taken differing views regarding whether unjust enrichment is an independent claim.

> The majority of Texas appellate courts hold that unjust enrichment is not an independent cause of action. *See, e.g., Barnett v Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 816 (Tex.App.-Dallas 2003, pet. denied); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex.App.-Corpus Christi 2002, pet. stricken and rev. denied). This view prevails among Texas courts notwithstanding the fact that the Texas Supreme Court, in *HECI Exploration C. v. Neel*, 982 S.W.2d 881 (Tex. 1998), refers to unjust enrichment as a "cause of action," a "remedy," and a "basis for recovery." *Id*. at 891. Most Texas courts have nevertheless read these statements as reiterations of the well-established principle that an equitable suit for restitution may be raised against a party based on the theory of unjust enrichment. *See Mowbray*, 76 S.W.3d at 680 & n. 25.

*Lilani v. Noorali*, No. H-09-2617, 2011 WL 13667, at *11 (S.D.Tex. Jan. 3, 2011) (footnote omitted). The district court in *Lilani* "side[d] with the majority view that unjust enrichment is merely an element of restitution for the purposes of [the motion before it]." *Id*. at n.62. "The unjust enrichment doctrine applies principles of restitution to disputes where there is

34

no actual contract and is based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution." *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex.App.-Dallas 2006) (court took position that "[u]njust enrichment is not an independent cause of action"). "Unjust enrichment is typically found under circumstances which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex.App.-Texarkana 1996) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

Like the district court in *Lilani*, this court will side with the majority view that under Texas law unjust enrichment is not an independent action but an element of restitution. Thus, Bean's separate claim for unjust enrichment cannot stand, and she will have to show that Crossmark needs to make restitution.

Crossmark has not received a benefit from Bean that requires restitution. Bean drove to her first retail location at the start of her day and from her last retail location to her home at the end of her day, time which was addressed in Crossmark's drive-time policy. Basically, she commuted to work as millions of employees do each day. In the very broadest and universal sense, every employer "benefits" from employees who commute back and forth to work. However, an employer does not pay for that benefit, absent unique circumstances required by statute. Bean's drive time did not bestow a specific or unique benefit on Crossmark that was unjustly retained.

35

Further, this not a situation where a benefit was obtained by fraud, duress or the taking of undue advantage. Such circumstances have not been pled by Bean, and in any event, no such circumstances exist in the record. Bean was informed about Crossmark's drive-time policy and agreed to follow it. Although Bean states that she recorded all of her drive time her first month of employment, after that time she was explicitly told by her supervisor that she would required to follow the drive-time policy in the future. Such conduct fails to meet the level required to demonstrate unjust enrichment.

Accordingly, all three of Bean's common law claims fail to survive summary judgment. Therefore, Crossmark's motion as to Bean will be granted, and she will be dismissed.

## IV.

### *Conclusion*

For all of the reasons stated herein, Crossmark's motion for summary judgment will be granted in part and denied in part. An order consistent with this opinion will be entered.

ENTER:

<u>        s/ Leon Jordan        </u>
United States District Judge

36